**U.S. Department of Justice**

*United States Attorney*
*District of Connecticut*

*Connecticut Financial Center*
*157 Church Street, 25th Floor*
*New Haven, Connecticut 06510*

*(203)821-3700*
*Fax (203) 773-5376*
*www.justice.gov/usao/ct*

October 26, 2026

*VIA ELECTRONIC MAIL*
Sebastian O. DeSantis
DeSantis Law Firm, LLC
157 Church Street, 19th Floor, Suite #1977
New Haven, CT 06510

Paul Vysotksky
Miller & Hine LLC
8764 Manchester Road
Suite 204
St. Louis, MO 63114

Re: United States v. Martel Williams
Case No. 3:25CR30 (SVN)

Counsel:

This letter confirms the plea agreement between your client, Martel Williams (the "defendant"), and the United States Attorney's Office for the District of Connecticut (the "Government") in this criminal matter.

**THE PLEA AND OFFENSE**

In consideration for the benefits offered under this agreement, the defendant agrees to plead guilty to an Count One of the Second Superseding Indictment, charging a violation of 18 U.S.C. § 1951(a), Conspiracy to Commit Hobbs Act Robbery.

The defendant understands that, to be guilty of this offense, the following essential elements must be satisfied:

1. First, that the defendant entered into an agreement with at least one other person to commit a Hobbs Act robbery;

2. Second, that the defendant knew of the goal of the conspiracy and had an intent to agree and an intent to commit the substantive offense; and

3. Third, that the defendant voluntarily participated in trying to accomplish the goal of the conspiracy.

**THE PENALTIES**

Imprisonment

This offense carries a maximum penalty of twenty (20) years of imprisonment.

Supervised Release

In addition, the Court may impose a term of supervised release of not more than three (3) years to begin after any term of imprisonment. 18 U.S.C. § 3583.

The defendant understands that, should he violate any condition of supervised release, he may be required to serve a further term of imprisonment of up to two (2) years per revocation pursuant to 18 U.S.C. § 3583 with no credit for time already spent on supervised release.

Fine

Under 18 U.S.C. § 3571, the maximum fine that may be imposed on the defendant is the greatest of the following amounts: (1) twice the gross gain to the defendant resulting from the offense or twice the gross loss resulting from the offense, whichever is greater; or (2) $250,000.

Special Assessment

In addition, the defendant is obligated by 18 U.S.C. § 3013 to pay a special assessment of $100 on each count of conviction. The defendant agrees to pay the special assessment to the Clerk of the Court on the day the guilty plea is accepted.

Restitution

In addition to other penalties provided by law, the Court also must order that the defendant make restitution under 18 U.S.C. § 3663A, and the Government reserves its right to seek restitution on behalf of victims consistent with the provisions of § 3663A. The scope and effect of the order of restitution are set forth in the attached Rider Concerning Restitution. Restitution is payable immediately unless otherwise ordered by the Court.

Interest, penalties, and fines

Unless otherwise ordered, should the Court impose a fine or restitution of more than $2,500 as part of the sentence, interest will be charged on the unpaid balance of the fine or restitution not paid within 15 days after the judgment date. 18 U.S.C. § 3612(f). Other penalties and fines may be assessed on the unpaid balance of a fine or restitution pursuant to 18 U.S.C. § 3572(h), (i) and

§ 3612(g). The defendant reserves the right to request that the Court waive interest and penalties as permitted by statute, and the Government reserves the right to oppose any such request.

Forfeiture

The defendant agrees that by virtue of his plea of guilty, he waives any rights or cause of action to claim that he is a "substantially prevailing party" for the purpose of recovery of attorney fees and other litigation costs in any related forfeiture proceeding pursuant to 28 U.S.C. § 2465(b)(1).

Credit Report

The defendant expressly authorizes the United States Attorney's Office to obtain a credit report concerning the defendant.

**THE SENTENCING GUIDELINES**

Applicability

The defendant understands that the Court is required to consider any applicable Sentencing Guidelines as well as other factors enumerated in 18 U.S.C. § 3553(a) to tailor an appropriate sentence in this case and is not bound by this plea agreement. The defendant agrees that the Sentencing Guidelines determinations will be made by the Court, by a preponderance of the evidence, based upon input from the defendant, the Government, and the United States Probation Office. The defendant further understands that he has no right to withdraw his guilty plea if his sentence or the Guidelines application is other than he anticipated, including if the sentence is outside any of the ranges set forth in this agreement.

Acceptance of Responsibility

At this time, and subject to the conditions specified below, the Government agrees to recommend that the Court reduce by two levels the defendant's adjusted offense level under § 3E1.1(a) of the Sentencing Guidelines, based on the defendant's demonstration of acceptance of responsibility for the offense. Moreover, and also subject to the conditions specified below, should the defendant qualify for a decrease under § 3E1.1(a) and his offense level determined prior to the operation of subsection (a) is level 16 or greater, the Government will file a motion with the Court pursuant to § 3E1.1(b) which recommends that the Court reduce the defendant's adjusted offense level by one additional level based on both his affirmative acceptance of responsibility as well as his prompt notification of his intention to enter a plea of guilty that permitted the Government to avoid trial preparation. The defendant understands that the Court is not obligated to accept the Government's recommendation under § 3E1.1(a) and that a decrease under § 3E1.1(a) is a prerequisite to a further reduction under § 3E1.1(b).

The Government's recommendation and motion are each conditioned on the defendant's affirmative acceptance of responsibility. If, in the Government's assessment, the defendant engages in any act or omission or takes any litigating position inconsistent with affirmative acceptance of responsibility, the Government is not obligated to (1) recommend a two-point reduction under § 3E1.1(a), or (2) file a third-point motion under § 3E1.1(b) (even if the Court has granted a two-point reduction, and even if the defendant's notification of his intention to enter a plea of guilty permitted the Government to avoid trial preparation).

In assessing whether the defendant has affirmatively accepted responsibility, considerations include (but are not limited to) whether he has: (1) truthfully admitted the conduct constituting the offense(s) of conviction and truthfully admitted (or not falsely denied) any additional relevant conduct for which he is accountable under § 1B1.3 of the Sentencing Guidelines; (2) disclosed to the United States Attorney's Office and the United States Probation Office a complete and truthful financial statement detailing his financial condition; (3) engaged in any act indicating that he has not terminated or withdrawn from criminal conduct or associations; (4) engaged in any act that could provide a basis for an adjustment for obstructing or impeding the administration of justice under § 3C1.1 of the Sentencing Guidelines; (5) engaged in any act constituting a violation of any condition of release; or (6) sought to withdraw his guilty plea or taken a position at sentencing not consistent with acceptance of responsibility. The Government expressly reserves the right not to recommend a two-point reduction under § 3E1.1(a) and not to move for a further reduction under § 3E1.1(b)—even if the court has granted a two-point reduction, and even if the defendant's notification of his intention to enter a plea of guilty permitted the Government to avoid trial preparation—based on such considerations or any other ground that, in the Government's assessment, is inconsistent with affirmative acceptance of responsibility.

The defendant understands that he may not withdraw his plea of guilty if, in accordance with the above, the Government does not recommend a reduction under § 3E1.1(a) or move for a further reduction under § 3E1.1(b).

<u>Stipulation</u>

Pursuant to § 6B1.4 of the Sentencing Guidelines, the defendant and the Government have entered into the attached stipulation, which is a part of this plea agreement. The defendant understands that this stipulation does not set forth all relevant conduct and characteristics that may be considered by the Court for purposes of sentencing. The defendant understands that this stipulation is not binding on the Court. The defendant also understands that the Government and the United States Probation Office are obligated to advise the Court of any additional relevant facts that subsequently come to their attention.

<u>Guidelines Stipulation</u>

The parties agree as follows:

The Guidelines Manual in effect on the date of sentencing is used to determine the applicable Guidelines range.

The defendant's base offense level under U.S.S.G. §2B3.1(a) is 20. Under U.S.S.G. §§ 2B3.1(b)(4)(B), the physical restraint of the targets of the robbery was intended in order to facilitate the commission of the object of the charged conspiracy and, accordingly, a 2-level enhancement applies, resulting in an adjusted offense level of 22. Assuming the conditions set forth above are met, 3 levels are subtracted under U.S.S.G. § 3E1.1 for acceptance of responsibility, resulting in a total offense level, per the Government's calculation, of 19.

At this time, based on information currently available, the Government cannot calculate the defendant's Criminal History Category. The ranges set forth below are based on placement of the defendant in Criminal History Category I and II. The parties reserve the right to recalculate the defendant's Criminal History Category, and corresponding sentencing ranges if these ranges are incorrect. The Government reserves its right to argue that any such re-calculation is not a basis for any variance or lower sentence and its right to oppose any request from the defendant for such a variance or lower sentence.

A total offense level of 19, assuming placement in Criminal History Category I, would result in a Guidelines range of 30 to 37 months of imprisonment (sentencing table) and a fine range of $10,000 to $250,000 (U.S.S.G. § 5E1.2(c)(3)). The defendant also is subject to a supervised release term of not more than 3 years. U.S.S.G. § 5D1.2. Placement in Criminal History Category II would result in a Guidelines range of 33 to 41 months of imprisonment. The other penalties would remain the same.

The Government and the defendant reserve their rights to seek a variance or a non-Guidelines sentence for reasons other than the Criminal History category of the defendant, and both sides reserve their right to object to a variance or a non-Guidelines sentence. Moreover, the defendant reserves the right to argue that a fine is not appropriate in this case, and the Government reserves the right to argue that a fine is appropriate in this case.

The defendant understands that the Court is not bound by this agreement on the Guideline ranges specified above. The defendant further understands that he will not be permitted to withdraw the guilty plea if the Court imposes a sentence outside any of the ranges set forth in this agreement.

In the event the United States Probation Office or the Court contemplates any sentencing calculations different from those stipulated by the parties, the parties reserve the right to respond to any inquiries and make appropriate legal arguments regarding the proposed alternate calculations. Moreover, the parties reserve the right to defend any sentencing determination, even if it differs from that stipulated by the parties, in any post-sentencing proceeding.

Information to the Court

The parties reserve their rights to address the Court with respect to an appropriate sentence to be imposed in this case. Moreover, the Government will discuss the facts of this case, including information regarding the defendant's background and character, 18 U.S.C. § 3661, with the United States Probation Office and will provide the Probation Officer with access to material in its file, with the exception of grand jury material.

**WAIVER OF RIGHTS**

The defendant acknowledges and agrees that he is knowingly, intelligently, and voluntarily waiving the following rights:

Waiver of Trial Rights and Consequences of Guilty Plea

The defendant understands that he has the right to be represented by an attorney at every stage of the proceeding and, if necessary, one will be appointed to represent him.

The defendant understands that he has the right to plead not guilty or to persist in that plea if it has already been made, the right to a public trial, the right to be tried by a jury with the assistance of counsel, the right to confront and cross-examine the witnesses against him, the right not to be compelled to incriminate himself, the right to testify and present evidence, and the right to compel the attendance of witnesses to testify in his defense. The defendant understands that by pleading guilty he waives those rights and that, if the plea of guilty is accepted by the Court, there will not be a further trial of any kind.

The defendant understands that, if he pleads guilty, the Court may ask him questions about each offense to which he pleads guilty, and if he answers those questions falsely under oath, on the record, and in the presence of counsel, his answers may later be used against him in a prosecution for perjury or making false statements.

Discovery

The defendant acknowledges that the Government may not have yet produced any or all discovery material, including but not limited to discovery under the Jencks Act, 18 U.S.C. § 3500, the Federal Rules of Criminal Procedure, *Brady v. Maryland*, 373 U.S. 83 (1963), *Giglio v. United States*, 405 U.S. 150 (1972), or the Local Rules of Criminal Procedure, Standing Order on Discovery. The attorneys for the Government are not aware of any information that, in their view, would establish the defendant's factual innocence of the crimes to which the defendant is pleading guilty. However, the attorneys for the Government do not warrant that they have reviewed all material in their possession, or that their assessment of the exculpatory nature of information known to them would be the same as that of the defendant or his counsel. Nonetheless, the defendant acknowledges that (1) he has accepted this plea agreement and decided to plead guilty because he is in fact guilty and seeks no further discovery or disclosures of information, and (2) in reaching that decision, he has not relied upon any representations concerning the Government

attorneys' assessment of information. On that basis, the defendant waives any and all right to withdraw his plea or attack his conviction, either on direct appeal or collateral attack, on the ground that the Government has not produced any discovery material beyond what already has been produced as of the date of this plea agreement. The Government nevertheless will produce, in advance of sentencing, additional material specifically requested by the defendant in connection with any sentencing issue, to the extent that the requested material is in the Government's possession.

Waiver of Statute of Limitations

The defendant agrees that, should the conviction following the defendant's guilty plea be vacated for any reason, then any prosecution that is not time-barred by the applicable statute of limitations on the date of the signing of this plea agreement (including any indictment or counts the Government has agreed to dismiss at sentencing pursuant to this plea agreement) may be commenced or reinstated against the defendant, notwithstanding the expiration of the statute of limitations between the signing of this plea agreement and the commencement or reinstatement of such prosecution. The defendant agrees to waive all defenses based on the statute of limitations with respect to any prosecution that is not time-barred on the date the plea agreement is signed.

Waiver of Right to Challenge Conviction

The defendant acknowledges that under certain circumstances he is entitled to challenge his conviction. By pleading guilty, the defendant waives his right to appeal or collaterally attack his conviction in any proceeding, including but not limited to a motion under 28 U.S.C. § 2255 and/or § 2241. In addition to any other claims the defendant might raise, the defendant waives the right to challenge the conviction based on (1) any non-jurisdictional defects in the proceedings before entry of this plea, (2) a claim that the statute(s) to which the defendant is pleading guilty is unconstitutional, and (3) a claim that the admitted conduct does not fall within the scope of the statute. This waiver does not preclude the defendant from raising a claim of ineffective assistance of counsel in an appropriate forum.

Waiver of Right to Appeal or Collaterally Attack Sentence

The defendant acknowledges that under certain circumstances, the defendant is entitled to challenge his sentence. In consideration for the benefits offered under this agreement, the defendant agrees not to appeal or collaterally attack the sentence in any proceeding, including but not limited to a motion under 28 U.S.C. § 2255 and/or § 2241, if that sentence does not exceed the Guideline range set forth above as adopted by the Court, three (3) years of supervised release, a $100 special assessment, and a fine and restitution consistent with this agreement and the attached Rider, even if the Court imposes such a sentence based on an analysis different from that specified above. Similarly, the defendant will not challenge any condition of supervised release imposed by the Court for which he had notice and an opportunity to object. The Government and the defendant agree that this waiver applies regardless of whether the term of imprisonment is imposed to run consecutively to or concurrently with, in whole or in part, the undischarged portion of any other sentence that has been imposed on the defendant at the time of sentencing in this case. Furthermore,

the parties agree that any challenge to the defendant's sentence that is not foreclosed by this provision will be limited to that portion of the sentencing calculation that is inconsistent with (or not addressed by) this waiver. This waiver does not preclude the defendant from raising a claim of ineffective assistance of counsel in an appropriate forum.

## ACKNOWLEDGMENT OF GUILT AND VOLUNTARINESS OF PLEA

The defendant acknowledges that he is entering into this agreement and is pleading guilty freely and voluntarily because the defendant is guilty. The defendant further acknowledges that he is entering into this agreement without reliance upon any discussions between the Government and the defendant (other than those described in the plea agreement letter), without promise of benefit of any kind (other than the concessions contained in the plea agreement letter), and without threats, force, intimidation, or coercion of any kind. The defendant further acknowledges his understanding of the nature of the offense to which the defendant is pleading guilty, including the penalties provided by law. The defendant also acknowledges his complete satisfaction with the representation and advice received from his undersigned attorney. The defendant and his undersigned counsel are unaware of any conflict of interest concerning counsel's representation of the defendant in the case.

## SCOPE OF THE AGREEMENT

The defendant acknowledges that this agreement is limited to the undersigned parties and cannot bind any other federal authority, or any state or local authority. The defendant acknowledges that no representations have been made to him with respect to any civil or administrative consequences that may result from this plea of guilty because such matters are solely within the province and discretion of the specific administrative or governmental entity involved. Finally, the defendant acknowledges that this agreement has been reached without regard to any civil tax matters that may be pending or which may arise involving the defendant.

## COLLATERAL CONSEQUENCES

The defendant understands that he will be adjudicated guilty of each offense to which the defendant has pleaded guilty and will be deprived of certain rights, such as the right to hold public office, to serve on a jury, to possess firearms and ammunition, and, in some states, the right to vote. Further, the defendant understands that if he is not a citizen of the United States, a plea of guilty may result in removal from the United States, denial of citizenship, and denial of admission to the United States in the future. The defendant understands that pursuant to section 203(b) of the Justice For All Act, the Federal Bureau of Prisons or the United States Probation Office will collect a DNA sample from the defendant for analysis and indexing. Finally, the defendant understands that the Government reserves the right to notify any state or federal agency by which the defendant is licensed, or with which the defendant does business, as well as any current or future employer of the fact of his conviction.

**SATISFACTION OF FEDERAL CRIMINAL LIABILITY; BREACH**

The defendant's guilty plea, if accepted by the Court, will satisfy the federal criminal liability of the defendant in the District of Connecticut as a result of the defendant's participation in the conduct which forms the basis of the Second Superseding Indictment in this case. This provision does not apply to any conduct unknown to the Government at the time of the signing of this agreement.

The defendant understands that if, before sentencing, he violates any term or condition of this agreement, engages in any criminal activity, or fails to appear for sentencing, the Government may void all or part of this agreement. If the agreement is voided in whole or in part, the defendant will not be permitted to withdraw the guilty plea.

**NO OTHER PROMISES**

The defendant acknowledges that no other promises, agreements, or conditions have been entered into other than those set forth in this plea agreement, and none will be entered into unless set forth in writing, signed by all the parties.

This letter shall be presented to the Court, in open court, and filed in this case.

Sincerely,

DAVID X. SULLIVAN
UNITED STATES ATTORNEY

KAREN L. PECK
ASSISTANT UNITED STATES ATTORNEY

The defendant certifies that he has read this plea agreement letter and its attachments or has had it read or translated to him, that he has had ample time to discuss this agreement and its attachments with counsel and that he fully understands and accepts its terms.

MARTEL WILLIAMS
The Defendant

10/26/26
Date

I have thoroughly read, reviewed, and explained this plea agreement and its attachments to my client who advises me that he understands and accepts its terms.

SEBASTIAN DESANTIS, ESQ.
Attorney for the Defendant

10/26/26
Date

## STIPULATION OF OFFENSE CONDUCT

The defendant and the Government stipulate to the following offense conduct and relevant conduct that give rise to the defendant's agreement to plead guilty to the information:

1. In August 2024, the defendant was living in the St. Louis area. He knew the following people who also lived in St. Louis: (1) Saif Faiq, a/k/a "Young" or "Yung"; (2) Dmarco Felton, a/k/a "Gmoney"; (3) John Davis, a/k/a "JayDee." "Jaydee," and "JD"; and (4) Sedric Louis, a/k/a "Sed." The defendant was also known as "Stink" and "Slop Gee." The defendant's iCloud account was genevieve4718@icloud.com.

2. On or about August 20, 2024, Felton sent the defendant a screenshot of a Snapchat message from "Crypto Kid" who was Faiq. The message included an address, "14 Morton St CT unit #2," and the line "We would need a #3 someone like stink would be perfect." "Stink" referred to the defendant. The defendant was contacted by Felton and by Faiq about traveling to Connecticut to steal cryptocurrency from someone there who lived at the Morton Street address. Faiq promised to pay the defendant a lot of money if he participated in the plan. The defendant reached out to his friends, Davis and Louis, about participating in the plan. The defendant grew up with Davis and Louis in the area around Genevieve Avenue in St. Louis.

3. The defendant agreed to go to Connecticut, along with Faiq, Davis and Louis. Faiq drove the defendant, Davis, and Louis to the airport and the group, including Faiq, flew into Westchester County Airport in New York on August 21, 2024. Once they arrived in Westchester County, Faiq did not want to travel by Uber to Connecticut as he wanted to avoid leaving any link or trace to him. Instead, he arranged for the group to take a taxi from the airport to an Airbnb rental house in a wooded area in Roxbury, Connecticut.

4. The defendant, Davis, and Louis did not pay for their flights to Connecticut. They also did not pay for the rental of the Airbnb.

5. Faiq explained to the others that someone from California, whom he called "the dude," was funding the trip. Faiq told them that the plan was to force their way into the home of a target in Connecticut who had a substantial amount of cryptocurrency. They would then force that person to transfer the cryptocurrency to their control. Faiq sent the defendant account numbers for the transfer of the cryptocurrency by the target to Faiq and "the dude."

6. After arriving in Connecticut, members of the group picked up a white Promaster van that had been left for them in a parking lot. Davis and Louis went to a rental car

company to pick up a white Honda Civic. And Faiq sent the defendant to pick up supplies, including a laptop computer and a set of walkie talkies. The group also purchased airsoft guns and cartridges.

7. Faiq gave the others directions about what to do. He also gave them instructions from the "dude" in California. The group communicated using Telegram, an encrypted messaging app. Faiq used the name "Lewis Ramirez" over Telegram, and the "dude" used the name "Kusha." Davis had a Telegram account under the name "Joe Joe."

8. The group, including the defendant, conducted surveillance in the target's neighborhood. They drove the Promaster van. At times, Faiq did surveillance in the rented Honda Civic. Another person, a male who had not come with them from St. Louis, was also there conducting surveillance. He drove a Nissan.

9. Over Telegram, the person from California, "the dude" (Kusha), gave the group information and instructions. They sent him a video of the targets' neighborhood. He told them the location of the parents and sent them photographs taken of the parents as they drove in town. He told them he would let them know when the parents were heading back home. He instructed them over Telegram, "the parents are 12 mins away from the house . . . maybe wait for them to open the door and rush in." He also texted, "just knock out the parents – they old as fuck."

10. The "dude" told them what he wanted them to do once inside the targets' house, including the following among other instructions:
    - "ask him where the ledgers are then retrieve them"
    - "then make him open it"
    - "and tell him to send the stolen bitcoin – all of it"
    - "and then on his desktop telegram message my username KUSH4553 from his acc"
    - "and from there I will paste the bitcoin address so he can copy it on his computer"
    - "and when he opens the ledgers get the pins anyways"
    - "you can call me while you in there ill tell you what to do"
    - "if he opens the door Rush him and tell him to take you to where his computer is"

11. The group went up to the door of a unit they were told was the targets' and knocked on it. No one answered the door. When they reported to "the dude" over Telegram that they had knocked and no one answered, he instructed them to wait for the parents to come back and then rush in. He also told them that it "might be better to just grab them," meaning the parents.

12. Faiq was communicating with "the dude" and with the defendant's group while the surveillance was happening. He knew what "dude" was instructing the defendant and the others. The "dude" messaged the defendant and the others over Telegram about the person in the Nissan who had been following the parents: "I told him to do whatever the fuck you need him to do."

13. At some point, the defendant, Davis, and Louis had difficulty reaching Faiq. They were concerned that they may have been seen on Ring cameras at the target's home. They believed that Faiq was letting them handle the dirty work. They were worried that grabbing the parents on a public street was too big a risk to take. Faiq pressed them to continue with the plan and told them to talk to the "dude" over Telegram.

14. The "dude" texted the group that he could fly others out to do the job.

15. The "dude" told them that the guy in the Nissan would help them. He offered to pay each of them $50,000 if they completed the mission. He sent money over Cash App to Davis' account.

16. The defendant, Davis and Louis decided to fly back to St. Louis without Faiq rather than continue with the plan. When they left, Faiq and the guy who had been driving the Nissan remained in Connecticut.

This written stipulation is part of the plea agreement. The defendant and the Government reserve their right to present additional offense conduct and relevant conduct to the Court in connection with sentencing.

MARTEL WILLIAMS
The Defendant

KAREN L. PECK
ASSISTANT UNITED STATES ATTORNEY

SEBASTIAN DESANTIS, ESQ.
Attorney for the Defendant

## RIDER CONCERNING RESTITUTION

The Court shall order that the defendant make restitution under 18 U.S.C. § 3663A as follows:

1. If the offense resulted in damage to or loss or destruction of property of a victim of the offense:

   A. Return the property to the owner of the property or someone designated by the owner; or

   B. If return of the property is impossible, impracticable, or inadequate, pay an amount equal to:

   The greater of -
   (I) the value of the property on the date of the damage, loss, or destruction; or

   (II) the value of the property on the date of sentencing, less the value as of the date the property is returned.

2. In the case of an offense resulting in bodily injury to a victim –

   A. Pay an amount equal to the costs of necessary medical and related professional services and devices related to physical, psychiatric, and psychological care; including non-medical care and treatment rendered in accordance with a method of healing recognized by the law of the place of treatment;

   B. Pay an amount equal to the cost of necessary physical and occupational therapy and rehabilitation; and

   C. Reimburse the victim for income lost by such victim as a result of such offense.

3. In the case of an offense resulting in bodily injury that results in the death of the victim, pay an amount equal to the cost of necessary funeral and related services.

4. In any case, reimburse the victim for lost income and necessary child care, transportation, and other expenses incurred during participation in the investigation or prosecution of the offense or attendance at proceedings related to the offense.

The order of restitution has the effect of a civil judgment against the defendant. In addition to the Court-ordered restitution, the Court may order that the conditions of its order of restitution be made a condition of probation or supervised release. Failure to make restitution as ordered may result in a revocation of probation, 18 U.S.C. § 3565, or a modification of the conditions of supervised release, 18 U.S.C. § 3583(e). Failure to pay restitution also may result in the defendant being held in contempt, or the defendant's re-sentencing to any sentence which might originally have been imposed by the Court. *See* 18 U.S.C. §§ 3613A, 3614. Moreover, in the event of default, notwithstanding any installment schedule for the payment of restitution, the

Court may order payment of the entire amount of restitution due within 30 days after notification of the default, subject to the provisions of 18 U.S.C. §§ 3572(i) and 3613A.